UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Martin Antonio Solomon,

        Plaintiff,        Case No. 20-10458

v.        Judith E. Levy
        United States District Judge

Henry Ford Allegiance Health
System, *et al.*,        Mag. Judge Patricia T. Morris

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [3]**

**I. Introduction**

On February 21, 2020, Plaintiff Martin Antonio Solomon, a paraplegic state prisoner in custody at the Charles Egeler Reception and Guidance Center in Jackson, Michigan, filed a *pro se* complaint under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. (ECF No. 1). He sues the Michigan Department of Corrections (MDOC), the Duane Waters Health Center, the Henry Ford Allegiance Health System, and several dozen individuals employed by

either MDOC or the Henry Ford Allegiance Health System. Plaintiff alleges that Defendants have deprived him of proper medical care, falsified a mental health diagnosis, and conspired against him to punish him for petitioning the Government for redress of his grievances. (ECF No. 1, PageID.2.)

Alongside his complaint, Plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 3.) Plaintiff alleges that he is not receiving appropriate medical care. (*Id*. at PageID.188). His primary concerns are that Defendants have (1) refused to perform a surgical procedure that would prevent blood clots in his lungs from reaching his heart, and (2) falsified a mental health diagnosis, which results in him being treated with unnecessary medication. (*Id*. at PageID.182-83, 190).

Plaintiff requests a temporary restraining order and preliminary injunction: (1) ordering surgical intervention to prevent the blood clots on his lung from reaching his heart; (2) prohibiting state officials from destroying security camera footage taken in the Duane Waters Health Center during October 2019; (3) preventing officials from medicating him because of an allegedly false mental health diagnosis; and (4) prohibiting

the MDOC defendants from retaliating against him. (*Id.* at PageID.184-186, 190). For the reasons stated below, Plaintiff's motion is denied.

**II. Legal Framework**

"The factors to be weighed before issuing a TRO are the same as those considered for issuing a preliminary injunction." *Monaghan v. Sebelius*, 916 F. Supp. 2d 802, 807 (E.D. Mich. 2012) (citing *Workman v. Bredesen,* 486 F.3d 896, 904–05 (6th Cir. 2007)). A district court must balance four factors to determine if relief is appropriate:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Hall v. Edgewood Partners Ins. Ctr.*, 878 F.3d 524, 526–27 (6th Cir. 2017).

Additionally, Rule 65 of the Federal Rules of Civil Procedure provides that the Court may issue a temporary restraining order without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

**III. Analysis**

## A. Plaintiff's Request for Surgical Intervention

Plaintiff alleges that the defendants have deprived him of adequate medical care for a serious medical need in violation of the Eighth Amendment to the United States Constitution. His primary concern is blood clots in one of his lungs, and he requests injunctive relief ordering surgery. (ECF No. 3, PageID.183.) Because Plaintiff has not shown a likelihood of success on the merits, his motion is denied with respect to this claim.

Eighth Amendment claims require a showing of deliberate indifference, which has both an objective and a subjective component. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). "The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). A plaintiff meets this requirement by showing that (1) prison officials failed to provide treatment for an inmate's serious medical condition or that (2) ongoing treatment for the condition is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

4

fairness." *Id.* (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)). If the plaintiff alleges inadequate treatment, "[t]here must be 'medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain,'" and "[t]he plaintiff also must 'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment." *Id.* at 737-38 (citations omitted).

Under the subjective component, "a plaintiff must show that the defendants acted with deliberate indifference." *Id.* at 738. A prison official acts with deliberate indifference when he consciously disregards an excessive or substantial risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The plaintiff must prove "that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Rhinehart*, 894 F.3d at 738 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Exhibits attached to Plaintiff's complaint show he has received regular and thorough medical care. Plaintiff was first taken to the

emergency room and examined for chest pain on December 27, 2019. (ECF No. 1, PageID.61.) On December 29, 2019, Plaintiff complained again of chest pain and returned to the emergency room. (*Id.* at PageID.65.) On December 31, 2019, Plaintiff returned to the emergency room, still with chest pain, and requested a "cat scan." (*Id.* at PageID.13.) The procedure revealed blood clots in his lungs. (*Id.* at PageID.75). Plaintiff was admitted to the hospital and remained there through January 3, 2020. (*Id.* at PageID.77). Plaintiff's discharge summary indicates that a physician ordered an echocardiogram and ultrasound of Plaintiff's lower extremities to rule out deep vein thrombosis and to determine "the clot burden." (*Id.*). The same physician also ordered medication and six months of therapy for anticoagulation. (*Id.* at PageID.78.) The physician determined Plaintiff's treatment could be completed on an outpatient basis. (*Id.*) On both January 4 and 7, 2020, Plaintiff was examined and evaluated at Henry Ford Health System. (*Id.* at PageID.80-92). He was cleared for a return to prison because his condition did not warrant further hospitalization. (*Id.* at PageID.85). By January 8, 2020, a treatment plan for Plaintiff's blood clots had been finalized. (*Id.* at PageID.91-92.) Plaintiff would receive a one-week

6

prescription for Xarelto, with a plan to bridge Plaintiff to Coumadin in an outpatient setting. (*Id.*)

Plaintiff cannot show a likelihood of success on the merits for his Eighth Amendment claim because he has not sufficiently alleged that his current medical care is inadequate. He argues that one of his medications, Xarelto, "doesn't stop blood clots from reaching the heart." (ECF No. 3, PageID.183.) To support this claim, Plaintiff alleges that one of his doctors explained to him that Xarelto would not stop blood clots from reaching his heart and that there are "devices designed to stop clots from reaching [his] heart, but they will not be used to save a jailhouse lawyer of [his] kind." (ECF No. 1, PageID.16-17.) However, even assuming Xareto alone would constitute inadequate care, Plaintiff's medical records show that Xarelto is used to "bridge," or transition, Plaintiff to Coumadin (also known as warfarin), another medication used to treat and prevent blood clots. (ECF No. 1, PageID.92.) Plaintiff does not argue that Coumadin will be ineffective in treating his blood clots, and therefore he has not shown that his current medical treatment is inadequate.

7

Moreover, although Plaintiff contends that surgery is necessary to stop the blood clots from reaching his heart (*Id.* at PageID.14), "a difference of opinion between a prisoner and a physician regarding treatment of a condition does not support an Eighth Amendment claim." *Hill v. Haviland*, 68 F. App'x 603, 604 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Thus, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Ultimately, a "court must consider the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures." *See Rumsey v. Michigan Dep't of Corr.*, 327 F. Supp. 2d 767, 777 (E.D. Mich. 2004) (citing *Westlake,* 537 F.2d at 860)). "[W]hether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and a decision not to administer a certain form of treatment does not constitute cruel and unusual punishment. *Estelle*, 429 U.S. at 107.

Because Plaintiff has not shown that the ongoing treatment for his condition is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," *Miller*, 408 F.3d at 819, he is not likely to succeed on the merits of his claim that he is receiving inadequate medical treatment for the blood clots in his lungs. Courts have long held that "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). Plaintiff's motion with respect to his request for surgery is therefore denied.

**C. Petitioner's Other Claims**

Plaintiff also seeks to enjoin Defendants from medicating him with psychiatric drugs, destroying security camera footage that will prove Plaintiff's mental health diagnosis is false, and retaliating against him for filing lawsuits. Plaintiff focuses his memorandum of law in support of his motion exclusively on the issue of medical treatment for his blood clots. (ECF No. 3, PageID.188-197.) He does not address the merits of his other claims. Additionally, his pleadings do not include, as required by

9

Federal Rule of Civil Procedure 65, "specific facts . . . [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." F. R. Civ. Proc. 65(b)(1)(A). His motion is denied with respect to these claims.

### 1. Psychiatric Medication

Plaintiff alleges that his psychiatric medication causes blurred vision, severe headaches, and loss of sleep and mental focus. (ECF No. 3, PageID.194). Plaintiff does not specify either which diagnosis he believes to be false or which medication or medications he wishes to no longer take. Additionally, attachments to the complaint indicate that Plaintiff has a history of schizophrenia. (ECF No. 1, PageID.59). His "interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Washington v. Harper*, 494 U.S. 210, 231 (1990). Without more specific allegations, Plaintiff cannot show that "immediate and irreparable injury, loss, or damage will result" before the Defendants can be heard in opposition on this claim. Fed. R. Civ. P. 65.

### 2. Security Footage

Plaintiff alleges that security camera footage will show that Plaintiff's doctor did not visit him on October 3, 2019, the date of his alleged mental health diagnosis. (ECF No. 3, PageID.184.) Plaintiff's complaint and motion do not contain specific facts or allegations that show Defendants have attempted or will attempt to destroy security camera footage such that it would not be available in discovery should this case proceed. Therefore, Plaintiff has not shown that "immediate and irreparable injury, loss, or damage will result" before the Defendants can be heard in opposition on this claim. Fed. R. Civ. P. 65.

### 3. Retaliation

Plaintiff includes only conclusory allegations that Defendants are retaliating against him for filing lawsuits. (ECF No. 3, PageID.185.) This is not enough to show that that "immediate and irreparable injury, loss, or damage will result" before the Defendants can be heard in opposition. Fed. R. Civ. P. 65.

Because Plaintiff has failed to meet the requirements of Federal Rule of Civil Procedure 65 for his claims relating to his psychiatric medication, security camera footage, and retaliation, his motion is denied with respect to these claims.

## IV. Conclusion

For the reasons given above, Plaintiff's motion for an temporary restraining order and preliminary injunction is **DENIED.**

IT IS SO ORDERED.

Dated: March 17, 2020  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
  United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 17, 2020.

  s/William Barkholz
  WILLIAM BARKHOLZ
  Case Manager