UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN ANTONIO SOLOMON,

  *Plaintiff,*

   CASE NO. 20-CV-10458
   DISTRICT JUDGE JUDITH E. LEVY
   MAGISTRATE JUDGE PATRICIA T. MORRIS

v.

NICOLAUS STEVEN HOGGAN, et al.,

  *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 25), PLAINTIFF'S MOTION FOR AN EXTENSION OF TIME (ECF No. 17), AND PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT (ECF No. 27)**

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (ECF No. 25), be **GRANTED**, and that Plaintiff's Motion to Alter or Amend Judgment, (ECF No. 27) and Plaintiff's Motion for Extension of Time (ECF No. 17) be **DENIED.**

## II. REPORT

### A. Introduction

On February 21, 2020, Plaintiff Martin Antonio Solomon, who appears before the Court *pro se*, filed this complaint under 42 U.S.C. § 1983 alleging violations of the First, Fourth, Fifth, and Eighth Amendments and the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. (ECF No. 1, PageID.2, 46, 49-50.)

This Court granted a motion to exclude this case from the Pro Se Early Mediation Program. (ECF No. 23.) All pretrial matters were assigned to the undersigned magistrate judge on June 26, 2020. (ECF No. 30.) Defendants Coleman, Forsythe, Otten, Poma, Rashed, and Vigor filed the instant Motion for Summary Judgment on May 28, 2020, (ECF No. 25), "based solely on failure to exhaust administrative remedies," to which Plaintiff responded and Defendants replied. (ECF Nos. 28, 31.) Below, I summarize the allegations set forth in the instant Motion, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

**B.     Factual Background**

Defendants who bring this motion, David Vigor, M.D.; Rickey Coleman, D.O.; Bashir Rashed, M.D.;[1] Amy Otten, N.P.; David Forsythe, M.D.; and Andrea Poma, N.P., (ECF No. 25, PageID.313), are all employed by the Duane L. Waters Health Center or the Charles Egeler Reception and Guidance Center, according to Plaintiff's complaint. (ECF No. 1, PageID.7-8.) Defendants who bring this Motion do not dispute this.

In his complaint, Plaintiff alleges that Defendants, who include employees of the Michigan Department of Corrections (MDOC), the MDOC-operated Duane Waters Health Center and Charles Egeler Reception and Guidance Center, and Henry Ford Allegiance Health Hospital (Henry Ford), an outside medical facility, have denied Plaintiff healthcare, discriminated against him because of his disability, retaliated against him because of a separate lawsuit, and attempted to kill him. Plaintiff reported chest pain, coughing up

---

[1] I note that Defendants' Motion refers to this Defendant as "Rashed Bashir" although he is listed in the docker at "Bashir Rashed." This writer will refer to Defendant Rashed as his name is docketed.

blood, shortness of breath, and several other symptoms, and requested a CAT scan. (ECF No. 1, PageID.10.) Defendants Hill, Coleman, Rashed, Alfred, and Otten "deliberately failed to place Plaintiff on [a] blood thinner . . . to stop blood clots from forming[.]" (*Id*.) Plaintiff uses a wheelchair due to a spinal injury. (*Id*.) Plaintiff reported these symptoms to Defendant Hoggan but he "discharged Plaintiff without conducting examination of his body for spinal injuries or blood clots." (*Id*. at PageID.10-11.) According to Plaintiff "defendants refused to [treat him] for the sole purpose to cause the death of Plaintiff[.]" (*Id*. at PageID.11.) Plaintiff states he reported these symptoms on November 13, 2019, December 27, 2019, and December 29, 2020; on December 29, he was taken to Henry Ford, but claims that Defendants there "falsified medical records to reflect that Plaintiff [] didn't report any other symptoms to then cover up the need for further work up on blood clots and spinal problem[.]" (*Id*. at PageID.11-12.)

Plaintiff received a CAT scan which revealed blood clots in his lungs. (*Id*. at PageID.13.) He states that "no surgical intervention was taken to stop bloods [sic] from reaching the heart for the sole purpose for [sic] budget restriction and to cause the death of Plaintiff to punish Plaintiff for pursuing litigation and defendants and their co-conspirators." (*Id*. at PageID.14.) Plaintiff also complains of an infection in his big toe which was allegedly ignored by Defendants on December 27, 2019. (*Id*. at PageID.15-16.)

In terms of relief requested, Plaintiff requests that this Court issue an injunction requiring Coleman and others to send Plaintiff to the hospital, return his property, restrain MDOC employees from using a "retaliatory transfer," stop medicating Plaintiff with medication prescribed by a "false mental health diagnosis," and to award compensatory

and punitive damages. (*Id*. at PageID.51-52.) In the present Motion, Defendants Vigor, Coleman, Bashir, Otten, Forsythe, and Poma argue that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint and that they are thus entitled to summary judgment. (ECF No. 25.)

  **C.**  **Summary Judgment Standard**

  When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such a motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

  The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts

and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**D.     Governing Law**

**1.     PLRA**

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies mandate requires both (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at

93. Prior to *Woodford*, there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.* "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies—specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 205; *id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). The *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity, the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). *See also* MDOC PD 03.02.130 (eff. March 18, 2019) ("Information provided shall be limited to the

facts involving the issues being grieved (i.e., who, what, when, where, why, how.) Dates, times, places and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130(S) (eff. March 18, 2019)).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

### 2. MDOC Policy

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. July 9, 2007); MDOC PD 03.02.130 (eff. March 18, 2019).[2] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P) (eff. July 9, 2007).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V) (eff. July 9, 2007). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X) (eff. July 9, 2007). The policy provides the following instructions regarding the information that needs to be included in a grievance:

---

[2] Although the MDOC policy effective March 18, 2019 supersedes the July 9, 2007 policy, Plaintiff's grievances were filed in 2013-2014, so I will refer to the 2007 policy in this section.

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R) (eff. July 9, 2007). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB) (eff. July 9, 2007). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF) (eff. July 9, 2007). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.* The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG) (eff. July 9, 2007). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### E.  Analysis

Defendants argue Plaintiff's failure to exhaust administrative remedies against them as a defense to Plaintiff's claims. (ECF No. 25.) Based on the evidence submitted by Defendants in support of their Motion, which includes an affidavit certifying all of Plaintiff's Step III grievances, he appears to have submitted 29 grievances which made it to Step III, all but two of which were either rejected or denied and closed. (ECF No. 25-1.) The two remaining grievances on the report do not indicate whether they were resolved, or

at what step in the process they stand: Grievance ID SRF-13-06-0959-28a indicates only that it was denied, but not closed, and Grievance ID JCF-13-11-1894-28j does not include an indication of its status. (*Id*. at PageID.329, 330.) However, the dates provided in the report are telling. All the grievances filed by Plaintiff which made it to Step III were filed in 2013 or 2014. (*Id*.) The conduct alleged by Plaintiff in this case took place in 2019 and 2020. (ECF No. 1, PageID.11, 15-16.)

Defendants argue that "Plaintiff's Certified Copy of his Grievance History Report further confirms that he failed to exhaust any grievance related to the incident in question" and that Plaintiff's grievance records "reveal no grievances related to health care." (*Id*. at PageID.322.) It is true that a grievance must be properly exhausted before it is properly filed as a complaint in federal court, and it is also true that the level of specificity required for exhaustion in this case depends on the MDOC policy. MDOC policy requires that proper exhaustion of a grievance include the facts applicable to the grievance, such as the dates, conduct, and names of the individuals. MDOC PD 03.02.130(R) (eff. July 9, 2007).

The grievance report does not indicate any grievances filed in, or related to, conduct occurring in 2019 or 2020—the time of the alleged misconduct "related to the incident in question." (ECF No. 25, PageID.325.) In other words, Defendants' provided evidence supports their assertion that Plaintiff has not exhausted his administrative remedies as to the complained-of conduct. "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas,* F. Supp. 2d at 492. In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.*

at 493. Plaintiff has not provided specific facts or evidence that refutes the grievance record. I suggest that this Motion is properly brought as the evidence supports the absence of a genuine issue of material fact concerning Plaintiff's exhaustion of his administrative remedies as to these Defendants. I therefore recommend that Defendants' Motion be granted.

      F.      **Plaintiff's Motions**

Next I will address the two pending Motions brought by Plaintiff. First, Plaintiff filed a Motion to Amend this Court's Order excluding this case from the Pro Se Prisoner Early Mediation Program (ECF No. 27), which followed a Motion to Exclude by Defendants. (ECF Nos. 14, 23.) The Motion to Exclude was filed on April 20, 2020, in which Defendants argued that Plaintiff had not exhausted his administrative remedies, and the Order granting exclusion was filed May 26, 2020. Plaintiff filed this Motion on May 29, 2020. (ECF No. 27.)

Federal Rule of Civil Procedure 59(e) provides: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." The decision of whether to grant relief under Rule 59(e) is within the Court's discretion. *Turnpaugh v. Maciejewski*, No. 08-cv-12842, 2009 WL 588409, at *1 (E.D. Mich. Mar. 6, 2009) (citing *Davis by Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 132 (6th Cir.1990)). "A federal district court judge, however, has discretion to grant a motion to alter or amend judgment only in very narrow circumstances:

    1. to accomodate an intervening change in controlling law;
    2. to account for new evidence which was not available at trial; or;
    3. to correct a clear error of law or to prevent manifest injustice."

*Turnpaugh*, 2009 WL 588409, at *1 (citing *Kenneth Henes Special Projects Procurement v. Continental Biomass Industries, Inc.*, 86 F.Supp.2d 721, 726 (E. D. Mich. 2000). "A motion to alter or amend judgment brought by a *pro se* prisoner pursuant to Rule 59(e) may properly be analyzed as a motion for reconsideration pursuant to Local Rule 7.1 of the Eastern District of Michigan." *Turnpaugh*, 2009 WL 588409, at *1 (citing *Hence v. Smith*, 49 F. Supp. 2d 547, 550 (E. D. Mich.1999). "The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof. A palpable defect is a defect that is obvious, clear, unmistakable, manifest, or plain." *Turnpaugh*, 2009 WL 588409, at *1 (citing *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E. D. Mich. 1997).

Plaintiff's Motion to Amend the Court's Order excluding this case from the Pro Se Prisoner Early Mediation Program must be denied. Plaintiff argues that Defendants have interfered with Plaintiff's ability to timely respond to motions such as Defendants' Motion to Exclude, and notes that he received his mail regarding this case two weeks late. (ECF No. 27, PageID.354.) Plaintiff also requests "copies of order[s] or opinions dismissing particular defendants because plaintiff has not received the court opinion issued after the initial screening and does not know about what claims survived the screening process." (*Id*. at PageID. 356.) Plaintiff has not presented a change in controlling law, new evidence, or a clear error of law. Nor has Plaintiff presented a palpable defect or explained how the case would be disposed of differently if it had not been excluded from the program. Although Plaintiff's complaint of receiving his mail late is notable, such a claim is insufficient to support the standard and requirements for granting a Motion to Amend. Further, to the

extent that Plaintiff is confused as to the remaining claims and defendants in his case, a review of the docket does not reveal to this writer that any Defendants or claims have been dismissed at this time, even post-screening. I recommend that Plaintiff's Motion to Amend be denied.

Finally, Plaintiff filed a Motion for Extension of Time to File an Amended Complaint. (ECF No. 17.) Judge Levy ordered that Plaintiff file an amended complaint within 21 days of the Order filed on March 17, 2020. (ECF No. 6, PageID.217.) The Order warned Plaintiff that "[f]ailure to comply with this order within twenty-one days of the date the order could result in the dismissal of this case." (*Id*. at PageID.218.) This Motion was filed on March 21, 2020. (ECF No. 17.) Plaintiff requests a 14-day extension to file his amended complaint. (Id. at PageID.278.) To date, the docket reflects that Plaintiff has not filed an amended complaint as ordered.

This Court has the authority to extend deadlines for good cause. Fed. R. Civ. P. 6(b). Here, Plaintiff requested 14 days from March 21, 2020 to file his amended complaint due to "severe injuries and medical condition and blurred vision[.]" (ECF No. 17, PageID.278.) Judge Levy's order to file an amended complaint including direction to Plaintiff to provide a short and plain statement of the facts with supporting law. Since resolution of this case is based on a failure to exhaust, I recommend that the motion to extend also be denied.

### G.  Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (ECF No. 25), be **GRANTED**, and that Plaintiff's Motion

to Amend Judgment, (ECF No. 27) and for an extension of time (ECF No. 17) be **DENIED**..

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 23, 2020               S/ PATRICIA T. MORRIS
                                      Patricia T. Morris
                                      United States Magistrate Judge